UNITED STATES DISTRICT COURT FOR THE SOUTHERN
DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| ROBERT ARWADY and SAMUELIA ARWADY,<br>　Plaintiffs,<br>v.<br><br>UNITED STATES OF AMERICA,<br>　Defendant. | Cause No. 4:17-cv-03195 |

**PLAINTIFFS' SECOND AMENDED COMPLAINT**

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW Plaintiffs ROBERT and SAMUELIA ARWARDY and, complying with this Court's Order of March 26, file this Amended Complaint, complaining of the United States of America, and in support thereof would show the Court as follows:

**Parties**

1. Robert and Samuelia Arwady are a married couple, citizens of the United States and of Texas, who reside in this District.

2. Defendant United States of America is a jural entity and has consented to be sued.

## Jurisdiction

3. This matter arises under the Constitution and laws of the United States. Jurisdiction is based upon 28 U.S.C. §1331. Venue is proper since all acts complained of occurred within the Houston Division of the Southern District of Texas.

## Causes of Action

4. The Arwady's business, Arwady Hand Truck Sales, was licensed as a Federally licensed firearms dealer, or FFL. In 1998, ATF prosecuted Mr. Arwady for acts which were in fact committed by an employee and without his knowledge. All his FFL records were seized. He was acquitted of all charges, and his records were returned, but only in part.

5. Over the period 1999-2006, ATF inspectors performed compliance inspections, and ultimately revoked his FFL due to insufficient recordkeeping, based on the records that were missing after ATF returned his records.

6. Upon the FFL revocation becoming final in 2007, Mr. Arwady transferred the hundred-plus firearms still in its inventory to himself, as his personal collection. All the transfers were with the required paperwork and background check. He advertised the firearms on the internet, but handled all transactions carefully and legally. A private seller can sell without keeping records or performing a

background check, but Mr. Arwady was more careful. Upon a purchaser selecting a firearm, Mr. Arwady would transfer the firearm to a licensed FFL. It would be logged into the FFL's inventory. The FFL would then make the actual transfer to the purchaser, recording it in his books and performing the required background check.

7. In 2009, ATF began an investigation of Mr. Arwady and sent an undercover agent to Mr. Arwady in an attempt to get him either to (1) sell a gun directly to the agent without going through an FFL or (2) get Mr. Arwady to purchase and resell to the agent a gun that was not already in his collection. Mr. Arwady refused to do either. He told the undercover agent that he would not sell without the background check because otherwise he could not be sure that the undercover agent was a legal buyer.

8. ATF in fact advises private sellers that the best way to transfer a firearm is to follow the procedure that Mr. Arwady did, that is, transfer through an FFL with a background check of the transferee.

9. ATF Agent proceeded to arrest and raid Mr. Arwady anyway, together with one of Mr. Arwady's employees. Despite the requirements of statute that only firearms "particularly named and individually identified" as involved in a violation were subject to seizure, and the Fourth Amendment's requirement that a search warrant particularly describe the things to be seized, ATF seized every firearm or firearm

part found.

10. The firearms were seized for civil forfeiture, and the government subsequently initiated a forfeiture action, *United States v. 165 Firearms*, Civil Action No. H-09-3622, in this Court. The forfeiture action was dismissed by Judge Sim Lake, on October 5, 2012, with the note that the forfeiture had been pending for three years, and criminal charges had yet to be filed.

11. Mr. Arwady was offered various plea bargains, down to a plea to a misdemeanor. He refused, and in March 2014 fourteen U.S. Marshals arrested him.

12. On the eve of trial (some six years after the raid and seizure) the government dismissed six of the eight charges. On October 21, 2015, a unanimous jury acquitted Mr. Arwady of the remaining two charges.

## Count One:
## Federal Tort Claims Act

13. Plaintiffs re-allege all the allegations of paragraphs 1-12.

14. In the Federal Tort Claims Act, 28 U.S.C., chapter 171, the United States consented to be sued on claims actionable under State law, with certain exceptions.

15. The United States seized 165 firearms from Mr. Awady in July 2009, and returned 160 of them in two installments in 2015 and 2016. When the firearms were returned, many had been damaged. Many were missing parts or accessories. Others had damage to their finish, having been delivered jostling in the bed of a pickup truck. Those which had been in "new in box" condition, a firearm's most

valuable state, had been taken from their boxes and the boxes not returned. At least one firearm showed signs it had been carried on a raid: it had accessories mounted on it which it had not carried at the time it was seized.

16. The United States had a duty to exercise reasonable care to protect Mr. Arwady's firearms while they were its custody. This duty was breached, causing the damage described above.

17. The decision to use reasonable care to protect Mr. Arwady's property is not one susceptible to a policy decision.

18. Upon information and belief, ATF policies and instructions to staff require proper preservation and handling of seized firearms, and these binding, non-discretionary policies were breached by its agents.

19. Plaintiffs submitted a claim to the relevant agencies, which the United States has denied.

Wherefore, Plaintiffs ask that the Court:

    1. Award them their actual damages;

    2. Award them their taxable costs; and

    3. Grant such further relief as is proper.

Dated this ___ day of April, 2019

Respectfully submitted,

/s/ *David T. Hardy*
David T. Hardy
8987 E. Tanque Verde, No. 265
Tucson, AZ 85749
(520) 749-0241
dthardy@mindspring.com
District Ct Bar No. 3138110
Attorney for Plaintiffs